MPR:GMP
F. #2019R01560

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

BRYANT ESPINOZA AGUILAR,

    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN SUPPORT OF ARREST WARRANT

(T. 21, U.S.C., § 1904(c)(2))

EASTERN DISTRICT OF NEW YORK, SS:

  JASON FRANKS, being duly sworn, deposes and states that he is a Special Agent with the Drug Enforcement Administration, duly appointed according to law and acting as such.

  On or about and between December 1, 2016 and January 9, 2017 within the Eastern District of New York and elsewhere, the defendant BRYANT ESPINOZA AGUILAR did knowingly, willfully combine, conspire, confederate and agree with others to commit violations of the Kingpin Act, in violation of Title 21, United States Code, Sections 1906(a), 1904(b)(1), (c)(1) and (c)(2).

  (Title 21, United States Code, Section 1904(c)(2))

  The source of your deponent's information and the grounds for his belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

1.	I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been involved in the investigation of numerous cases involving the investigation of narcotics offenses.  I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for drug trafficking, money laundering and firearms offenses, as well as other offenses.  During my 15-year tenure with the DEA, I have participated in numerous narcotics and money laundering investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds and records of narcotics and money laundering transactions have been found; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers and money launderers; (d) debriefed cooperating drug traffickers and money launderers; (e) monitored wiretapped conversations of drug traffickers and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals engaged in drug trafficking and money laundering.  As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.  I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file; and from reports of other law enforcement officers involved in the investigation.  I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2. At all times relevant to this complaint, the Office of Foreign Assets Control ("OFAC") of the United States Department of Treasury administered and enforced economic sanctions programs against narcotics traffickers. As part of the sanctions program, the names of persons and entities designated pursuant to the Kingpin Act, whose property and interests in property are blocked, are published in the Federal Register and incorporated into a list of Specially Designated Nationals ("SDN List") with the OFAC program tag "[SDNTK]" to designate Specially Designated Nationals who are narcotics traffickers. The SDN List is readily available through OFAC's web site: http://www.treasury.gov/sdn.

3. In 2000, OFAC designated Rafael Caro Quintero, a Mexican national who is the former head of the Guadalajara Cartel and one of the current leaders of the Sinaloa Cartel, as a specially designated narcotics trafficker under the Kingpin Act. Caro Quintero has appeared on the publicly available SDN List from the date of his designation until the present. At the time of his designation, Caro Quintero was imprisoned based on a conviction for ordering the torture and murder of DEA Special Agent Enrique "Kiki" Camarena, among other charges. On June 12, 2013, the U.S. Department of the Treasury found that, while in prison, Caro Quintero continued to be allied with Mexican drug trafficking organizations and used his family members to invest his illicit fortune into ostensibly legitimate companies and real estate projects in Mexico.

4. In the early hours of August 9, 2013, a Mexican tribunal ruled that Caro Quintero could be released from custody because he had been tried improperly in a federal tribunal, rather than a state tribunal. The Mexican tribunal's finding was later overturned, but Caro Quintero remained at large as a fugitive from Mexican and U.S. justice. Following

Caro Quintero's release, on October 31, 2013, the U.S. Treasury Department expanded Caro Quintero's OFAC designation by designating 20 entities and one individual linked to Caro Quintero to the OFAC list.

5. On May 11, 2016, OFAC designated Caro Quintero's common law wife, a Mexican national, a specially designated narcotics trafficker ("SDNT Wife"). In addition to Caro Quintero, his SDNT Wife has appeared on the publicly available SDN List from the date of her designation until the present. In addition, the U.S. Department of Treasury made public several press releases detailing Caro Quintero's inclusion on the SDN List, including the two additional Caro Quintero-linked designations in 2013, and it released at least one press release that described the SDNT Wife's inclusion on the SDN List and the reasons for her designation. For example, the public announcement of the SDNT Wife's inclusion on the OFAC list noted that the SDNT Wife held some of Caro Quintero's assets under her name, which Caro Quintero purchased with drug proceeds.

6. Any financial transactions within the United States, or by a United States person wherever located, in property or interests owned or controlled by any person identified and designated by OFAC as a SDNT, is prohibited pursuant to the Kingpin Act, under Title 21, United States Code, Section 1904(c)(1).

7. In the drug trafficking world, drug traffickers often use a "testaferro" or "straw man" to hold businesses or properties when the business or property was procured with narcotics proceeds. The intent is that, as a result of having a "testaferro" as the owner of the business or property, the government will not seize the asset. As a result, drug traffickers often seek out individuals who do not have a criminal record and who have a relationship of trust with the trafficker.

5

8. According to a cooperating witness (the "CW"), the SDNT Wife has used her son, the defendant BRYANT ESPINOZA AGUILAR as a "testaferro" for her assets. BRYANT ESPINOZA AGUILAR is a United States citizen, which constitutes a U.S. person under the Kingpin Act.

9. For example, according to the CW,[2] a former associate of Caro Quintero, in or about late 2011, s/he assisted BRYANT ESPINOZA AGUILAR with several administrative matters regarding a luxury home owned by the SDNT Wife, which had been purchased with narcotics proceeds. The luxury home, which the Mexican government had seized for a period of time while the SDNT Wife was incarcerated on drug trafficking charges, was returned to the SDNT Wife after she won a lawsuit against the Mexican government. After the home was returned to the SDNT wife, Caro Quintero instructed the CW to assist the SDNT Wife with a high tax bill that had been imposed against the luxury home. The CW agreed to do so. The luxury home was located at Calle Farallon 304, Manzana XIII, Lote 1, in Jardins del Pedregal (the "Calle Farallon House").

10. Pursuant to these instructions, the CW arranged a meeting with an official from the city registrar for BRYANT ESPINOZA AGUILAR, who also had been tasked with dealing with this tax matter by his mother, the SDNT Wife. At this point, the CW observed a deed for the Calle Farallon House, which included BRYANT ESPINOZA AGUILAR as the lawful owner of the property. While the deed included BRYANT

---

[2] The CW has pled guilty to drug trafficking crimes and is providing information with the hope that s/he will received a reduced sentence in the future. Information provided by the CW has proven reliable in the past and has been corroborated by independent evidence.

ESPINOZA AGUILAR's name as the lawful owner, the CW understood that the SDNT Wife was the owner of the property.

11. The CW introduced BRYANT ESPINOZA AGUILAR to the city registrar official during which BRYANT ESPINOZA AGUILAR negotiated the percentage of the outstanding tax bill owed on the Calle Farallon House and the amount of the bribe ESPINOZA AGUILAR would have to pay to obtain a reduced tax bill. After this meeting, the CW reported back to Caro Quintero about what had transpired. The CW also witnessed a conversation between ESPINOZA AGUILAR and the SDNT Wife during which ESPINOZA AGUILAR advised the SDNT Wife about his arrangement with the city registrar official.

12. On a following occasion, the CW attended a meeting between BRYANT ESPINOZA AGUILAR and the city registrar official during which the CW witnessed BRYANT ESPINOZA AGUILAR give envelopes filled with cash to the city registrar official, which was the bribe upon which they had previously agreed. Based on conversations the CW witnessed between ESPINOZA AGUILAR and the SDNT Wife, the CW further believes that ESPINOZA AGUILAR bribed the same official to change the name of the owner of the Calle Farallon House on the public registry to match the deed, which was in the name of BRYANT ESPINOZA AGUILAR.

13. A search of Mexican public documents corroborates the CW's account. On or about October 20, 2004, a company called Scope International was registered as the owner of a house located on Calle Farallon 304, Manzana XIII, Lote 1, in Jardins del Pedregal (the "Calle Farallon House"). At the time Scope International was registered as the owner of the Calle Farallon House, Individual 1 was the administrator. On or about

February 15, 2006, the SDNT Wife became the new administrator of Scope International with full rights.   Approximately three years after the SDNT Wife became the new administrator of Scope International, the Mexican Assistant Attorney General's Office for Special Investigations on Organized Crime ("SEIDO") seized Scope International.   SEIDO held Scope International until September 12, 2012.   The SDNT Wife was the administrator at that time.

        14.    On or about September 24, 2013, approximately one month after Caro Quintero left prison, and approximately three months after the U.S. Department of the Treasury expanded Caro Quintero's OFAC designation to include six of his family members and three businesses linked to Caro Quintero, public records show that the SDNT Wife resigned her position as the administrator of Scope International, and appointed BRYANT ESPINOZA AGUILAR as the administrator.   The SDNT Wife made this transfer to ESPINOZA AGUILAR only one month before the U.S. Department of the Treasury designated 20 additional companies and another associate of Caro Quintero's on the OFAC list.   Based on my review of these records and the CW information indicating that BRYANT ESPINOZA AGUILAR acted as a testeferro for his mother, the SDNT Wife, it appears that the SDNT Wife transferred the property to BRYANT ESPINOZA AGUILAR to protect her property from being restrained in anticipation of the fact that she may be designated on the OFAC List.   As noted above, the SDNT Wife was, in fact, added to the OFAC List on May 11, 2016.

        15.    On or about December 22, 2016, approximately six months after the SDNT Wife was designated on the OFAC list, the defendant BRYANT ESPINOZA AGUILAR received a check for one million Mexican pesos on behalf of Scope International

for the sale of the Calle Farallon House.   On or about January 9, 2017, ESPINOZA AGUILAR completed the sale of the Calle Farallon House for a total of 23 million pesos (approximately $1 million), when the market value of the Calle Farallon House was 33.7 million pesos (approximately $3 million).   Based on my training and experience, I believe BRYANT ESPINOZA AGUILAR sold the property for below-market value because the sole purpose of the transaction was to avoid having the sale of the property restrained due to the SDNT Wife's inclusion on the OFAC List.

16.   Based on the foregoing, there is probable cause to believe that BRYANT ESPINOZA AGUILAR was acting as a testaferro or straw man for the SDNT Wife when he completed this transaction and this transaction was, in fact, done on behalf of SDNT Wife.   There is therefore probable to believe that ESPINOZA AGUILAR conspired with the SDNT Wife to conduct this transaction in violation of Kingpin Act.

WHEREFORE, your deponent respectfully requests that the defendant BRYANT ESPINOZA AGUILAR, be dealt with according to law.

JASON FRANKS
Special Agent, Drug Enforcement Administration

Sworn to me by telephone this
18th day of June, 2020

s/Ramon E. Reyes, Jr.
THE HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK